882 So.2d 402 (2004)
Victor ORTIZ, Appellants,
v.
DEPARTMENT OF HEALTH, BOARD OF MEDICINE, Appellee.
No. 4D03-1763.
District Court of Appeal of Florida, Fourth District.
July 21, 2004.
William E. Williams and J. Andrew Bertron, Jr. of Huey, Gilday, Tucker, Schwartz & Williams, P.A., Tallahassee, for appellant.
Charles J. Crist, Jr., Attorney General, and Edward A. Tellechea, Assistant Attorney General, Tallahassee, for appellee Board of Medicine.
WARNER, J.
Appellant, a certified registered nurse anesthetist, ("CRNA") challenges Administrative Rule 64B8-9.009(6)(b)1.a., adopted by the Board of Medicine ("Board"), which requires a surgeon in an outpatient facility to have a licensed M.D. or D.O. anesthesiologist present to supervise the administration of anesthesia. He argues that the *403 Board exceeded its delegated grant of authority when promulgating the rule, and the rule contravenes a specific statutory prohibition under section 458.303(2), Florida Statutes (2002). The administrative law judge determined that the Board acted within its authority when adopting the rule. However, we disagree and conclude that the Board exceeded its delegated authority. We therefore reverse.
Section 464.012, Florida Statutes (2002), of Chapter 464 governing the nursing profession, provides the criteria for becoming an advanced registered nurse practitioner, including a CRNA. Those requirements include a current license to practice nursing and one or more of the following requirements:
(a) Satisfactory completion of a formal postbasic educational program of at least one academic year, the primary purpose of which is to prepare nurses for advanced or specialized practice.
(b) Certification by an appropriate specialty board. Such certification shall be required for initial state certification and any recertification as a registered nurse anesthetist or nurse midwife. The board may by rule provide for provisional state certification of graduate nurse anesthetists and nurse midwives for a period of time determined to be appropriate for preparing for and passing the national certification examination.
(c) Graduation from a program leading to a master's degree in a nursing clinical specialty area with preparation in specialized practitioner skills.
§ 464.012(1). When a CRNA receives that advanced license, he or she may, "to the extent authorized by established protocol approved by the medical staff of the facility in which the anesthetic service is performed," perform a variety of medical procedures connected with the administration of anesthesia. § 464.012(4)(a).
Chapter 458 governs the practice of medicine in the state. The Legislature created the Board of Medicine to regulate physicians. See § 458.307, Fla. Stat. (2002). It conferred rulemaking authority on the Board "to implement the provisions of this chapter conferring duties upon it." See § 458.309(1), Fla. Stat. (2002). However, in section 458.303(2), the Legislature limited the Board's rulemaking function as follows:
...
Nothing in ... s. 458.309 or s. 458.331 ... shall be construed to prohibit any service rendered by a registered nurse or a licensed practical nurse, if such service is rendered under the direct supervision and control of a licensed physician who provides specific direction for any service to be performed and gives final approval to all services performed.
To insure that physicians do not practice beyond their level of competency, the Legislature gave the Board the authority to establish rules governing standards of practice. Section 458.331, Florida Statutes (2002), sets forth grounds for disciplinary action. Section 458.331(1) lists acts that "constitute grounds for denial of a license or disciplinary action," including:
(v) Practicing or offering to practice beyond the scope permitted by law or accepting and performing professional responsibilities which the licensee knows or has reason to know that he or she is not competent to perform. The board may establish by rule standards of practice and standards of care for particular practice settings, including, but not limited to, education and training, equipment and supplies, medications including anesthetics, assistance of and delegation to other personnel, transfer agreements, sterilization, records, performance of complex or multiple procedures, *404 informed consent, and policy and procedure manuals.

(Emphasis added). Pursuant to that authority, the Board adopted standards of care for surgeons practicing in an office setting. See Fla. Admin. Code R. 64B8-9.009. It set different standards depending upon the level of surgery being performed. For level III surgery, the most complicated surgery which can be performed in an office setting, the Board enacted the following rule regarding training:
The surgeon must have staff privileges at a licensed hospital to perform the same procedure in that hospital as that being performed in the office setting or must be able to document satisfactory completion of training such as Board certification or Board qualification by a Board approved by the American Board of Medical Specialties or any other board approved by the Board of Medicine or must be able to demonstrate to the accrediting organization or to the Department comparable background, training and experience. In addition, the surgeon must have knowledge of the principles of general anesthesia. If the anesthesia provider is not an anesthesiologist, there must be a licensed M.D., or D.O., anesthesiologist, other than the surgeon, to provide direct supervision of the administration and maintenance of the anesthesia.

Fla. Admin. Code R. 64B8-9.009(6)(b)1.a. (emphasis added). Appellant challenges the last sentence of this rule. Essentially, the rule requires an anesthesiologist to directly supervise the administration of anesthesia in an outpatient surgery center. If an anesthesiologist is present, then there is no need for a CRNA, as they both do essentially the same things. Indeed, "[t]he parties stipulated that since the adoption of the challenged rule, the physicians for whom [appellant] previously provided anesthesia services four or five days a week will no longer employ him for level III office surgeries because they believe that it is unnecessary and cost-prohibitive to pay him to provide the actual anesthesia services and an anesthesiologist to directly supervise him. Consequently, [appellant's] revenues have been reduced and his office practice has been substantially and adversely affected." Ortiz v. Dep't of Health, Bd. of Med., No. 03-0011RX, at 4-5 (DOAH Apr. 7, 2003) available at http://www.doah.state.fl.us/ros/2003/03-0011.doc.
We preface our analysis of this rule by noting that the parties agree that patient safety is not an issue in this proceeding. While the Board has studies to support its rule, this same rule was challenged on other grounds in Florida Academy of Cosmetic Surgery v. Department of Health, Board of Medicine, No. 00-0951RP (DOAH Nov. 16, 2000), and the administrative law judge found that there was no evidence to indicate any significant difference in patient outcomes whether anesthesia was administered by a CRNA or an anesthesiologist. See id. at 25. The judge's ruling was reversed in Florida Board of Medicine v. Florida Academy of Cosmetic Surgery, Inc., 808 So.2d 243 (Fla. 1st DCA 2002), only because the judge used the wrong standard of review of the evidence.
A person "substantially affected" by a rule may seek an administrative determination that the rule is an invalid exercise of delegated legislative authority. See § 120.56(1)(a), Fla. Stat. (2002). As pertains to this case, section 120.52(8), Florida Statutes (2002), states:
"Invalid exercise of delegated legislative authority" means action which goes beyond the powers, functions, and duties delegated by the Legislature. A proposed or existing rule is an invalid exercise *405 of delegated legislative authority if any one of the following applies:
...
(b) The agency has exceeded its grant of rulemaking authority, citation to which is required by s. 120.54(3)(a)1.;
(c) The rule enlarges, modifies, or contravenes the specific provisions of law implemented, citation to which is required by s. 120.54(3)(a)1.;
...
A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency's class of powers and duties, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the same statute.
The appellate court reviews the issue of whether an agency has exceeded its rulemaking authority de novo. See Fla. Acad. of Cosmetic Surgery, 808 So.2d at 253 (citation omitted).
Appellant contends that the Board's rule exceeded its authority because the provisions contained in section 458.303 limit the Board's rulemaking authority as provided in section 458.331. The Board cited sections 458.309(1) and 458.331(1)(v) as specific authority for adopting the rule. See Fla. Admin. Code R. 64B8-9.009. The issue presented is whether the provisions of section 458.303 limit the Board's ability under section 458.331 to promulgate this rule.
Section 120.52(8) provides that a rule is invalid when "[t]he agency exceed[s] its grant of rulemaking authority, citation to which is required," § 120.52(8)(b), or "[t]he rule enlarges, modifies, or contravenes the specific provisions of law implemented." § 120.52(8)(c). Further, the rulemaking authority should be "construed to extend no further than implementing or interpreting the specific powers and duties conferred by the same statute." § 120.52(8) (emphasis added). Where the section cited as the ground for rulemaking authority is specifically limited by another statute, interpretation of the specific powers and duties conferred upon the agency is required. See Fla. Bd. of Trs. v. Day Cruise Ass'n, 794 So.2d 696, 701 (Fla. 1st DCA 2001). Where rulemaking is granted in one statute, it should not be read in such a way as to negate restrictions on rulemaking authority set out in a different section. See id.
General rules of statutory construction require statutes that relate to the same subject or object be regarded in pari materia and construed together. See State v. Burkhart, 869 So.2d 1242, 1245 (Fla. 4th DCA 2004). Moreover, the more specific statute controls over the general one. See Day Cruise Ass'n, 794 So.2d at 701 (citing Gretz v. Fla. Unemployment Appeals Comm'n, 572 So.2d 1384, 1386 (Fla.1991) ("the more specific statute controls"); Adams v. Culver, 111 So.2d 665, 667 (Fla.1959) ("It is well settled ... that a special statute covering a particular subject matter is controlling over a general *406 statutory provision covering the same and other subjects in general terms."); Seven Seas Frozen Prods. v. Fast Frozen Foods, 43 So.2d 181, 182 (Fla.1949) (same)).
These principles require that the grant of rulemaking authority contained in section 458.331(1)(v) be construed together with section 458.303. Otherwise, specific legislative directives could be eliminated through the Board's exercise of its rulemaking authority. By specific reference in section 458.303(2) to both section 458.309 containing the general grant of rulemaking authority, and section 458.331, the Legislature has circumscribed the Board's rulemaking authority.
Section 458.331(1)(v) sets forth a ground for disciplinary action against a physician. A physician is subject to discipline for practicing beyond the scope permitted by law or performing services that the physician knows he or she is not competent to perform. The Board has rulemaking authority to develop standards of practice for particular practice settings. These standards provide notice to the physicians in those practice settings as to what acts constitute practice beyond the scope permitted by law.
However, section 458.303(2) specifically limits the reach of section 458.331. Pursuant to 458.303(2), the grant of rulemaking authority under section 458.309 and section 458.331 cannot be "construed to prohibit any service rendered by a registered nurse or a licensed practical nurse, if such service is rendered under the direct supervision and control of a licensed physician who provides specific direction for any service to be performed and gives final approval to all services performed." Thus, under sections 458.331 and 458.303(2), so long as a licensed physician has direct supervision and control over the registered nurse, the fact that services are provided by that nurse cannot be a ground for discipline of the physician, and no rules can prohibit such services by a registered nurse.
By its administrative rule, the Board has exceeded its rulemaking authority because it has adopted a practice standard that precludes the provision of anesthesia in all level III outpatient surgeries by a CRNA supervised by the surgeon. The rule requires that anesthesia be administered only under the direct supervision of an anesthesiologist. Section 458.303(2) specifically prohibits the use of rulemaking authority for this purpose. While the Board says that its rule does not control the actions of CRNAs, it has done indirectly what it cannot do directly. Instead of simply prohibiting CRNAs from administering anesthesia under the supervision of the surgeon, the Board provides grounds for disciplining the surgeon if he supervises the CRNA. Either way, section 458.303(2) prevents the use of rulemaking authority for this purpose.
The rule is also invalid under section 120.52(8)(c) because it modifies the terms of the specific provisions of the law implemented. Again, the specific limitations contained in section 458.303(2) must be construed together with the grant of authority in section 458.331. Section 458.303(2) prevents the use of the rulemaking authority to prohibit the provision of services by a registered nurse when supervised by a "licensed physician." The effect of the Board's rule is to modify the statute to apply in level III office surgery only when the registered nurse is supervised by a licensed anesthesiologist. In Florida Department of Health & Rehabilitative Services v. McTigue, 387 So.2d 454 (Fla. 1st DCA 1980), a statute authorizing the licensing of midwives required an applicant to possess a statement from a physician attesting that the applicant had attended fifteen deliveries "under the supervision of a duly licensed and registered physician." Id. at 455 (citing § 485.031(4)(b), Fla. Stat. *407 (1977)). In implementing the statute, HRS adopted a rule requiring that the physician be licensed in Florida. See id. at 456. The court held that HRS exceeded its authority because it modified the statute by adding an additional requirement not included by the Legislature, namely that the physician be licensed in Florida. See id. Similarly, in this case, by limiting the services a registered nurse may provide when supervised by a licensed physician, the Board also modified the statute it was attempting to implement by adding a restriction not included by the Legislature.
The Board argues that section 458.303(2) does not apply to CRNAs because the statute refers only to "registered nurses." This argument is without merit. A "`[r]egistered nurse' means any person licensed in this state to practice professional nursing." § 464.003(4), Fla. Stat. (2002). An "advanced registered nurse practitioner" is "any person licensed in this state to practice professional nursing and certified in advanced or specialized nursing practice." § 464.003(6) (emphasis added). Therefore, any advanced registered nurse practitioner, including a CRNA, must first have a license to practice professional nursing and, thereby, is necessarily a registered nurse. See § 464.012(1).
Although not determinative of the outcome here, we note that the Legislature contemplated an overlap of the regulations governing the practice of advanced nursing practitioners and medical doctors. Therefore, it created a specific committee to resolve issues of standard of practice and protocol. Section 458.348(2), Florida Statutes (2002), provides:
Establishment of standards by joint committee.  The joint committee created by s. 464.003(3)(c) shall determine minimum standards for the content of established protocols pursuant to which an advanced registered nurse practitioner may perform medical acts ... set forth in s. [464.012(4)] and shall determine minimum standards for supervision of such acts by the physician.... Such standards shall be based on risk to the patient and acceptable standards of medical care and shall take into account the special problems of medically underserved areas.
The Legislature created the joint committee in section 464.003(3)(c), which provides the committee shall consist of three members each from the Board of Nursing and the Board of Medicine. Because section 464.012(4)(a) provides specific acts that may be performed by a CRNA under the supervision of a licensed physician, it is up to the joint committee to work out the practice protocols and standards of supervision for the use of CRNAs. This power was not given to the Board of Medicine alone.
We reverse the order of the administrative law judge and declare that Rule 64B8-9.009(6)(b)1.a. is invalid to the extent that it requires a licensed anesthesiologist other than the surgeon to provide direct supervision of the administration and maintenance of anesthesia in level III surgery.
STONE and STEVENSON, JJ., concur.